# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY RENE MICHEL, <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. EDCV 17-01793-AFM <br><br> **MEMORANDUM OPINION AND ORDER REVERSING AND REMANDING DECISION OF COMMISSIONER** |

Plaintiff filed this action seeking review of the Commissioner's final decision denying his applications for Social Security disability insurance benefits and supplemental security income. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issues. This matter is now ready for decision.

## BACKGROUND

On May 24, 2011, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging disability beginning February 28, 2009. (Administrative Record ("AR") 170-183.) His applications were denied initially and upon reconsideration. (AR 116-125.) On March 1, 2013, a hearing was conducted before an Administrative Law Judge ("ALJ"). Plaintiff, who was

represented by counsel, testified at the hearing, along with a vocational expert ("VE"). (AR 56-91.)

On May 1, 2013, the ALJ issued a partially favorable decision, concluding that Plaintiff was disabled beginning March 30, 2012, entitling him to receive supplemental security income. Because Plaintiff's last insured date was September 30, 2009, however, he was not entitled to disability insurance benefits. (AR 28.) After the Appeals Council denied review, Plaintiff sought judicial review in this Court. The parties agreed that a remand was warranted, but disagreed as to the scope of that remand. The Court issued an order remanding the case so that the ALJ could develop the evidence regarding Plaintiff's disability onset date, including receipt of medical expert testimony, though the ALJ was not limited to considering only that issue. *Michel v. Colvin*, EDCV 14-2288-AFM.

A second hearing was conducted on June 7, 2016. The ALJ heard the testimony of Plaintiff, a medical expert ("ME") and a VE. (AR 863-912.) On October 12, 2016, the ALJ issued a partially favorable decision, concluding that Plaintiff had been disabled as of March 30, 2012 and remained disabled, but was not disabled at any time through September 30, 2009. (AR 837-856.)

The ALJ found that Plaintiff suffered from the following medically severe impairments: right upper extremity tremor; right shoulder derangement and tear of the anterior supraspinatus tendon, status post multiple surgeries; possible complex regional pain syndrome of the right upper extremity; degenerative disc disease of the lumbar spine, status post surgery; lumbar radiculitis; and cervical radiculitis, but that prior to March 30, 2012, he retained the residual functional capacity ("RFC") to perform a restricted range of light work. (AR 839, 842.) Specifically, the ALJ found that prior to March 30, 2012, Plaintiff was capable of performing light work except lifting and/or carrying 20 pounds occasionally and 10 pounds or less frequently; standing and/or walking for 6 hours out of an 8-hour workday but no more than 30 minutes at a time and would require an assistive device for longer

ambulation; sitting for 6 hours out of an 8-hour workday but with brief position changes after 1 hour; occasional bending, stooping, climbing stairs, and balancing; rarely kneeling, crawling, squatting, and crouching; no climbing ladders, ropes, or scaffolds; no work at unprotected heights, around moving machinery or other hazards; no jobs requiring hypervigilance or intense concentration on a particular task (meaning no jobs in which the very nature of the job is such that the individual could not be off task for even the shortest amount of time such as a surveillance monitor or where the safety of others is at issue); no overhead work with the dominant right upper extremity; frequent gross and fine manipulation with the dominant right upper extremity; frequent reaching in all directions with the dominant right upper extremity; and avoid concentrated exposure to vibrations, walking on uneven terrain, and pulmonary irritants such as odors, gases, fumes. (AR 842.)

The ALJ assessed the same RFC for the period beginning March 30, 2012, except with the additional limitation that Plaintiff's ability to reach and his ability to engage in gross and fine manipulation with his right upper extremity were reduced from frequent to occasional. (AR 851.)

Adopting the testimony of the VE, the ALJ determined that Plaintiff's RFC prior to March 30, 2012 did not preclude him from performing jobs that exist in significant numbers in the national economy. Accordingly, the ALJ found Plaintiff not disabled at any time prior to March 30, 2012. (AR 854-855.)

Also adopting the testimony of the VE, the ALJ found that beginning March 30, 2012, there were no jobs in the national economy that Plaintiff could perform, and therefore, he was disabled. (AR 855.) The Appeals Council denied review (AR 822-825), rendering the ALJ's decision the final decision of the Commissioner.

**DISPUTED ISSUES**

1. Whether the ALJ properly evaluated Plaintiff's subjective

complaints.

2. Whether the ALJ's RFC is supported by substantial evidence.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *See Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Garrison,* 759 F.3d at 1010; *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

**DISCUSSION**

The ALJ accurately summarized Plaintiff's subjective complaints, noting Plaintiff's testimony at the 2013 hearing that he last worked as a truck driver, but had been unable to work since 2009 because of difficulty standing, and sitting and his need to lie down during the day. Plaintiff testified that prior to his back surgery in October 2011, he had difficulty bending, and suffered from numbness and tingling in his arms and legs. (AR 64-66, 843.) According to Plaintiff's testimony, prior to his back surgery, he could sit for about two hours, walk about two blocks, and stand "a good half day." (AR 64-66.) Plaintiff still needed to lie down for hours during the day. (AR 81-82.) Plaintiff testified that he did not improve with surgery. (AR 65.) With regard to his right upper extremity, Plaintiff testified that he had

4

difficulty grabbing a door handle with his right hand, he dropped things, and could only sometimes write with his right hand. (AR 68-69.) Plaintiff avoided lifting anything with his right arm and estimated that he could lift 10 pounds with his left. (AR 73.) The ALJ further noted that Plaintiff said that he could perform only very light household chores and that sometimes his wife had to assist him with bathing and personal hygiene because of pain and weakness in his arms. (AR 79-80, 843.) The decision further indicates that the ALJ considered Plaintiff's June 2011 Exertional Activities Questionnaire and his March 2012 Function Report, in which Plaintiff made complaints similar to his testimony. (AR 843; *see* AR 224-226, 248-255.)

Plaintiff contends that the ALJ erred by not crediting his testimony, including that he needed to lie down for significant durations of the workday because of back pain. Where, as here, a claimant has presented evidence of an underlying impairment and the record is devoid of affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's subjective symptom statements must be "specific, clear and convincing." *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell*, 775 F.3d at 1138 (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)).

Factors the ALJ may consider when making such determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily

activities, and inconsistencies in testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). In addition, conflicts between a claimant's testimony and the objective medical evidence in the record can undermine a claimant's credibility. *Morgan v. Comm'r of Social Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999); *see generally* 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). "When evidence reasonably supports either confirming or reversing the ALJ's decision, [the court] may not substitute [its] judgment for that of the ALJ." *Batson v. Comm'r of Social Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The ALJ found Plaintiff's testimony about his pain and limitations not fully credible. The decision reveals that the ALJ provided two reasons for that finding: First, the ALJ noted that Plaintiff received routine and conservative treatment from the alleged onset date through the "established onset date" (March 2012), when Plaintiff's symptoms worsened. Second, the ALJ found that Plaintiff's alleged limitations were greater than expected in light of the objective medical evidence. (AR 843-844.)

Conservative treatment

In support of the adverse credibility finding for the period before March 30, 2012, the ALJ stated: "The treatment records reveal the claimant received routine and conservative treatment from the alleged onset date [February 28, 2009] through the established onset date." (AR 844.) Plaintiff contends that the ALJ's reliance on purported conservative treatment is not a valid basis for the credibility finding because it is not supported by substantial evidence.

Generally, evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). However, with respect to Plaintiff's testimony regarding his back impairment – namely, Plaintiff's purported need to lie down for some number of hours every day – the record does not support the ALJ's

6

characterization of the treatment as conservative. As Plaintiff points out, he underwent spinal surgery on October 3, 2011. (AR 564-566.) Plaintiff's surgery originally was scheduled for March 2011, but was postponed due to an intervening diagnosis of Bell's palsy and the need for neurological clearance. (AR 373-374.) Prior to the spinal surgery, Plaintiff also underwent an invasive surgical procedure called a diskogram, which involves inserting a needle into the intervertebral discs, on October 26, 2010. (AR 381-382.)

It is well established that surgery is not a "conservative" treatment, and the ALJ provided no explanation why Plaintiff's back surgery here should be considered conservative. *See Mattis v. Berryhill*, 2018 WL 2077856, at *13 (C.D. Cal. May 1, 2018) ("Three back surgeries followed by continued pain management through strong opioid medications, is neither routine nor conservative treatment."); *Contreras v. Colvin*, 2015 WL 859626, at *11 (E.D. Cal. Feb. 27, 2015) ("[S]urgery is not considered conservative treatment.") (citing *Ritchotte v. Astrue*, 281 F. App'x 757, 759 (9th Cir. 2008) (rejecting ALJ's conclusion that the claimant's treatment was too conservative where he had surgery and the prognosis was guarded)). Considering Plaintiff's diskogram and spine surgery in 2010 and 2011, Plaintiff's treatment for his back impairment cannot be fairly characterized as conservative though March 30, 2012. Accordingly, substantial evidence does not support the ALJ's finding that Plaintiff received only conservative treatment between the alleged onset date and March 2012, and the ALJ erred by discrediting Plaintiff's testimony on this ground.

<u>Lack of objective medical evidence</u>

The ALJ found that Plaintiff's subjective complaints were greater than expected in light of the objective evidence of record. (AR 844.) In so finding, the ALJ considered and discussed the following evidence.

In December 2008, Plaintiff's treating physician indicated that Plaintiff was in no apparent distress, pleasant, carried conversation while laughing and joking

and looked to be in "+3/10 pain" rather than "+10/10" as Plaintiff reported. (AR 364, 844.)

Plaintiff was referred to a neurologist by his treating physician in February 2009 due to complaints of numbness in his hands. During a February 11, 2009 neurological consultation, Plaintiff reported tremor and numbness in his right hand, but the examination showed normal motor strength, normal hand-grip strength of 5/5. Plaintiff's sensory was subjectively decreased by 50% on light touch and pinprick. (AR 281-282.) The neurologist opined that Plaintiff's intermittent sensory symptoms were likely stress related, questioned whether they were physiological, and suggested considering a referral to psychiatry. (AR 283.) A February 26, 2009 neurologic examination revealed similar findings. (AR 350-352.)

Plaintiff was seen in March 2009 for complaints of back pain. Plaintiff had 5/5 motor strength, reduced for certain areas to 4/5. His physician noted the MRI showing spondylosis disc degeneration with internal foraminal narrowing at L4-L5. (AR 284-285.) Plaintiff's physician discussed the surgery option, explaining that surgery would likely be necessary in the future when Plaintiff's pain escalated. He instructed Plaintiff to return in twelve months or earlier as needed. (AR 285.) In April 2009, Plaintiff complained of right shoulder, arm, and elbow pain, tingling, numbness and loss of grip, which he said was "moderate to disabling" in severity. (AR 286-288.) Physical examination showed minimal decreased range of motion of the right wrist, no instability, and right hand and wrist strength was 5/5. Plaintiff was diagnosed with a "sprain" of his right upper extremity. (AR 287-288.) Similarly, a physical examination in September 2009, revealed Plaintiff had 5/5 strength, +2 reflexes, good peripheral pules, no edema. (AR 845, 301.) The ALJ noted that in November 2011, Plaintiff reported decreasing strength in his right hand "over past 2-3 years," but physical examination showed only decreased right hand strength of 4/5. (AR 413-415.)

The ALJ also noted the absence of any evidence of peripheral neuropathy, carpal tunnel syndrome, or cervical radiculopathy and explained that the medical evidence related to Plaintiff's right upper extremity impairment did not suggest that he suffered any limitations beyond the assessed RFC prior to March 30, 2012. (AR 850.) The ALJ identified the first time that there was medical evidence indicating that Plaintiff had additional limitation in his hands was a report from April 2012 noting Plaintiff's hands trembled when he held a pen. (AR 450, 851.) While observing that there was some question as to whether this was only a temporary issue related to stress, the ALJ accepted that this record accurately reflected his ability to use his right hand as of that date. (AR 851.)

Plaintiff objects that the ALJ's analysis was unduly influenced by medical reports dated December 24, 2008 and February 11, 2009, and an MRI from January 2009, because these reports predated his alleged onset date by from several weeks to two months. According to Plaintiff, the date renders this medical evidence irrelevant to his condition as of February 28, 2009. However, unless the claimant proves that his condition has worsened, medical evidence predating the alleged date of onset is relevant. *See Leitner v. Comm'r Social Sec. Admin.*, 361 F. App'x 876, 878 (9th Cir. 2010) (citing *Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989). Notably, here, Plaintiff does not allege that after February 11, 2009 (the date of the last pre-onset report) some discreet event occurred that dramatically altered his back or shoulder impairments such that evidence of his condition on December 24, 2008 through February 11, 2009 was no longer probative of his condition on February 28, 2009. And the ALJ did not assign particularly significant weight to the few reports about which Plaintiff complains. Rather, after mentioning these records, the ALJ proceeded to discuss all of the other medical evidence pertaining to Plaintiff's condition at or near the time of alleged onset.

In sum, substantial evidence supports the ALJ's conclusion that Plaintiff's testimony regarding the extent of his pain and symptoms was greater than what was

indicated by the objective evidence. But that alone is not an adequate ground for the adverse credibility finding. While the lack of objective medical evidence is a valid factor the ALJ may consider, it may not form the sole basis for a credibility determination. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). As discussed above, the only other basis cited by the ALJ – conservative treatment – was not supported by substantial evidence, and therefore, lack of objective evidence (as the remaining reason) is an insufficient basis for the adverse credibility finding.

The Commissioner provides two arguments in an effort to defend the ALJ's credibility determination, neither of which is persuasive. First, the Commissioner notes that Plaintiff asserted that he was disabled due in part to high blood pressure, asthma, heart problems, and knee impairments, but the ALJ found that these were not severe impairments, were treated conservatively, or were adequately controlled by medication. While arguably true, this argument fails to address the current disputed issue, namely whether it was proper to reject Plaintiff's subjective complaints related to the impairments that the ALJ found were severe – including Plaintiff's back impairments which he said required him to lie down for hours during the day.

Second, the Commissioner argues that although the ALJ "did not draw a direct link" between various factors and Plaintiff's credibility, the Court can logically discern the ALJ's clear and convincing reasons from "the four corners of the decision." (Defendant's Memorandum at 5.) Those purported reasons, as set forth by the Commissioner, are: "Plaintiff's claims of multiple disabling

impairments that were not borne out by the record, the objective medical evidence, his treatment history, the effectiveness of treatment, and inconsistencies in the record between his claims and the medical opinions." (Defendant's Memorandum at 5.)

Yet, even with the benefit of a generous reading, the Court cannot locate within "the four corners of the decision" any reason for rejecting Plaintiff's subjective complaints arguably articulated by the ALJ beyond the two already discussed. While a reviewing court may draw specific and legitimate inferences from an ALJ's decision, it cannot speculate on the ALJ's reasoning or make "post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking"). Moreover, under closer scrutiny, the Commissioner's proffered list reduces to the same two reasons discussed above. That is, the reasons in the list boil down to whether Plaintiff's treatment was conservative and the absence of objective medical evidence supporting his subjective complaints.

Thus, the Court concludes that the ALJ failed to provide an adequate basis for rejecting Plaintiff's subjective complaints. Further, this error was not harmless: If accepted, Plaintiff's subjective complaints would not be inconsequential to the disability determination and might well result in a different disability conclusion by the ALJ. *See Brown-Hunter*, 806 F.3d at 494-496.[1]

**REMEDY**

Ninth Circuit case law "precludes a district court from remanding a case for

---

[1] Because the Court has found that the ALJ's adverse credibility determination constitutes reversible error and remands on that basis, it need not reach the second disputed issue.

11

an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (citations omitted). "The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. . . . If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Dominguez*, 808 F.3d at 407 (citation and internal quotation marks omitted).

Although the Court has found error as discussed above, the record on the whole is not fully developed, and factual issues remain outstanding. The issues concerning Plaintiff's alleged disability "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *See Brown-Hunter*, 806 F.3d at 496; *see also Treichler*, 775 F.3d at 1101 (remand for award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved") (citation omitted); *Strauss v. Comm'r of the Social Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (same where the record does not clearly demonstrate the claimant is disabled within the meaning of the Social Security Act). Accordingly, the appropriate remedy is a remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).[2]

IT THEREFORE IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this opinion.

DATED: 6/15/2018

*Alex Mack*

---

[2] It is not the Court's intent to limit the scope of the remand.

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE